[No. 1351.   February 4, 1911.]
HAGERMAN IRRIGATION COMPANY, Appellee, v.
J. F. McMURRY, Appellant.

SYLLABUS (BY THE COURT).

1. Findings of fact by a trial court without a jury will not be disturbed by this court on appeal, if they are based on substantial evidence.

2.  Until the time within which an application to benefi-
cial use must be made to complete an initiated appropriation
of water for purposes of irrigation was fixed by statute, it
was necessary that such application be made within a reason-
able time.

3.  The common law doctrine of riparian rights in
natural streams has been superseded in New Mexico by that
of prior appropriation and application to beneficial use of
water of the streams.

4.  The water of a natural stream, when impounded
and reduced to possession by artificial means, is personal
property.

5.  In this Territory a corporation has the right to make
an appropriation of water from a natural stream and dis-
tribute it to those who may require it for purposes of irriga-
tion, whether it has land connected with such irrigation
system or not.

6.  The evidence did not require a finding of any more
than nominal damages for the plaintiff.

7.  The question of exemplary damages is addressed to
the discretion of the jury, or the court trying the cause
without a jury, where the evidence legally warrants such
damages; and this court will not, ordinarily, at least, under-
take to control that discretion by requiring the assessment
of such damages.

8.  The plaintiff complained that the defendant had
taken forcible possession of its dam, by means of which and
a connected canal it had undertaken to supply and was
supplying water from the Rio Hondo for irrigating crops,
then growing, to a large number of farmers, who were de-
pendent on it for water; that the defendant was taking
water from its reservoir for his own use by removing flash-
boards from its said dam, so as to allow the water to flow
down to his land on said stream, and that its business of
supplying water, as aforesaid, would be irreparably injured
by the acts of the defendant, if they should be continued.
Held: That the matter was properly cognizable in a court

of equity; that a preliminary injunction, and, after trial, a permanent injunction, were properly issued against the defendant.

Appeal from the District Court for Chaves County, before. WILLIAM H. POPE, Chief Justice. Affirmed with correction.

EDWARD S. GIBBANEY and GEORGE H. PEET for Appellant.

An injunction will not issue to take property out of the possession of one party and put it in the possession of another. High on Injunction 1008; 16 A. & E. Enc. 345; Munyos et al v. Fillmore et al, 76 S. W. 257; 1 Beach on Injunctions, sec. 20; 2 Beach on Injunctions, sec. 998; High on Injunctions, 2 ed., secs. 698, 701, 728; 27 American Dig., secs. 82-85; Criswell v. Beakley, 67 S. W. 907; Powell v. Canadey, 69 S. W. 686; Gildersleeve v. Overstolz, 71 S. W. 371; Perkins v. Macon, 79 S. W. 987; 2 Farnham on Waters, 1663, 1843, 1853; Medacco Ditch Co. v. Adams, 68 Pac. 431; Shields v. Johnson, 79 Pac. 394; Lockhart v. Leeds, 12 N. M. 156; Crescent Min. Co. v. Silver King Mining Co., Utah, 54 Pac. 244; Lacassaigne v. Chapius, 144 U. S. 119; Arnold v. Bright, 41 Mich. 207; Romero v. Munos, 1 N. M. 314; Umatilla Irrigation Co. v. Umatilla Improvement Co., 22 Ore. 366; Sayre v. Johnson, Mont., 81 Pac. 389; Nephi Irrigation Co. v. Vickers, 81 Pac. 144.

An appropriator does not lose his right to the water diverted by a delay in applying the water to beneficial use where such delay is due to accident, as by the breaking of his ditch before the application of the water. Long on Irrigation, sec. 47; Wells v. Kreyenhagen, 49 Pac. 128.

Non-user alone, short of the period of limitation, is insufficient to show abandonment. Alamosa Creek Canal Co. v. Nelson, 93 Pac. 1112; Gardiner v. Wright, 91 Pac. 286; Long on Irrigation, par. 85; People v. Farmers High Line Canal Res. Co., 54 Pac. 626; Putnam

v. Curtis, 43 Pac. 1056; Ada County Farmers Irrigation Co. v. Farmers Canal Co., 51 Pac. 990; Tucker v. Jones, 19 Pac. 571; Gassert v. Noyes, 44 Pac. 959; Turner v. Cole, 49 Pac. 971.

An appropriator who has abandoned or forfeited his right may resume his right and avoid the effect of the abandonment or forfeiture, provided he does so before another appropriator has acquired any valid rights to the use of such water. Tucker v. Jones, 19 Pac. 571; Brook Resv. Co. v. St. Vrain Res. Co., 4 Pac. 1066.

As long as the appropriator does not abandon, but continues in good faith, the application of the water to his land, as rapidly as his means and circumstances will permit, he will be held to be within the limit of a reasonable time. Long on Irrigation, secs. 48, 90; Taughenbaugh v. Clark, 40 Pac. 153; Colo.; Arnold v. Passavent, 49 Pac. 400, Mont.; Moss v. Rose, 41 Pac. 666, Ore.; 17 A. & E. 518; 2 Farnham on Waters 1748; Anaheim Water Co. v. Semi-Tropic Water Co., 30 Pac. 623, Cal.; Egan v. Estrada, Ariz., 56 Pac. 721; Church v. Stillwell, 12 Colo. 43; North Powder Milling Co. v. Coughanour, 34 Ore. 9; Bowman v. Bowman, 57 Pac., Ore.; Lakeside Ditch Co. v. Crane, 22 Pac. 76; Hargrave v. Cook, 41 Pac. 18; Watts v. Spencer, 94 Pac. 39; Cave v. Crafts, 53 Cal. 135; Cox v. Clough, 70 Cal. 345; Baker v. Brown, 55 Tex. 377; 1 A. & E 875.

REID & HERVEY and JOHN I. HINKLE for Appellee.

Abandonment is a matter of intention and it is within the province of the court to determine whether abandonment has or has not taken place. Wiel on Water Rights, 2 ed. 351; Keeny et al v. Carillo et al, 2 N. M. 480; Cooper v. Shannon, 36 Col. 98.

Findings of fact will not be disturbed if based upon substantial evidence. Richardson v. Pierce, 14 N. M. 334; Eagle Mining Co. v. Hamilton, 14 N. M. 271; Hancock v. Beasley, 14 N. M. 239; Candelaria v. Miera, 13 N. M. 360; Ortiz v. Bank, 12 N. M. 519; Marquez

v. Land Grant Co., 12 N. M. 445; Carpenter v. Lindauer, 12 N. M. 388; Rush v. Fletcher, 11 N. M. 555; Romero v. Coleman, 11 N. M. 533; Gale & Farr v. Salas, 9 N. M. 211.

A corporation is entitled to appropriate water from streams without being owner of land or user of water for irrigation on the land. C. L. 1897, secs. 468-493; Laws 1905, chap. 79, sec. 131, par. 1; Irrigation Co. v. Gutierrez, 10 N. M. 177.

It was the duty of the court to assess punitive damages. Sample v. Fresno Co. et al, 129 Cal. 222.

The true measure of damage was the value of the water to the plaintiff. Heyneman v. Blake, 19 Cal. 579; Wiel Water Rights in the Western States, 2ed., secs. 153 et seq.; Hesperia etc. v. Gardiner, 4 Cal. App. 357; Bear Lake Co. v. Ogden, 8 Utah 494; Fallon v. O'Brien, 11 Q. B. D. 21; Parks Canal and Min. Co. v. Hoyt, 57 Cal. 44; North Point etc Co. v. Utah etc. Co., Utah, 63 Pac. 813; 4 Sutherland on Damages, sec. 1022, 3 ed.

Exemplary damages may be given. 4 Sutherland Damages, secs. 1031, 1032, 3 ed.; Snores v. Brooks, 81 Ga. 468; Best v. Allen, 30 Ill. 30; Farwell v. Warren, 51 Ill. 467; Raynor v. Nims, 37 Mich. 34.

Injunction was the proper remedy. Criswell v. Beakley, Texas, 67 S. W. 907; Powell v. Canadey, Mo., 9 S. W. 686; Wiel on Water Rights, 2 ed., secs 154, 155, 198-205.

It is for the court and jury to say what is reasonable time. Keeney v. Carillo, 2 N. M. 480; Smith v. Hawkins, 110 Cal. 122; Laws 1905, chap. 102, sec. 5; Laws 1907, chap. 49, sec. 42.

## STATEMENT OF FACTS.

In November, 1885, Pat. H. Boone and Joseph C. Lea filed their articles of association, incorporating the Hondo Falls Ditch Company, and claiming an appropriation of water from the Rio Hondo. Boone had filed on his land adjoining in the fall of 1882, and in 1883 had built the dam on the site where it is now located, at a natural dam in the Rio Hondo. George Williams owned

a large tract of land in the neighborhood, which Lea managed, or owned an interest in. Boone first used the water on his land in 1883, and soon after he built the dam, Lea bought an interest in the project, which they then enlarged, and, in 1884, irrigated the lands of Boone and Lea from the dam, filing their articles of association in 1885, as above stated. Williams afterward conveyed his interest to Lea, and some of the land was put under cultivation. These interests of Boone and Lea were finally conveyed to the defendant, here the appellant. The appellant was, at the time of the acts complained of, the owner of land, bordering on the Rio Hondo below the dam, which he irrigated by means of the dam and the ditch connected with it, and on which crops were then growing, needing irrigation. In June, 1887, Pat. H. Boone, Pat. F. Garrett, C. D. Bonney, and A. H. Whetstone, incorporated as the Pecos Valley Ditch Company, the predecessor in title of the plaintiff, here the appellee. These articles of association were filed in the office of the Secretary of New Mexico on June 6, 1887, on the same day articles of incorporation of the Hondo Falls Ditch Company were filed for record. The dam of the Northern Canal, so called, was constructed by the Pecos Valley Ditch Company in 1890 and 1891, on the Rio Hondo, about one and three-fourths miles above the appellant's dam, and, by mesne conveyances, this canal, with the entire scheme of irrigation, of which it was a part, came to the plaintiff about March 1, 1907. The plaintiff had undertaken to supply water for irrigation by means of the Northern Canal project to some two hundred farmers, some of whose lands were as much as thirty-five miles away, and was so supplying water to them at the time of the acts of the defendant complained of; and the water released by the defendant from the plaintiff's reservoir was necessary to enable the plaintiff to supply the requirements of the farmers according to its agreements with them. In June, 1907, the defendant removed three of the flashboards from the dam, each about five and one-half feet long and five and one half inches wide, and let the water he claimed pass down the river to his dam, for irrigating

his farm; stationed an armed man at the plaintiff's dam who prevented the boards from being replaced, and kept the water running until stopped by the temporary injunction issued upon complaint filed by the plaintiff in this cause.

Each party claims, as against the other, prior appropriation and application to beneficial use of the water in controversy. The plaintiff also claimed that the predecessors in title of the defendant had abandoned whatever right to the water Boone and Lea originally may have acquired and that between its dam and that of the defendant, enough water came into the Rio Hondo from springs to irrigate all the land the defendant had the right to irrigate from the waters of the stream. The defendant claimed that, as riparian owner of the Rio Hondo, he had the right to its natural flow to his land, denied that the plaintiff corporation had the right to appropriate and impound the water of the stream for the purpose of selling the water-rights to water-users, alleged that the matters involved were not properly cognizable in a court of equity, and that the preliminary injunction should have been dissolved on his motion.

The trial court made the following findings: 1. Plaintiff is competent and has sufficient interest to prosecute this suit. 2. The pleadings are sufficient to support the prayer. 3. The defendant's predecessor is, as against the plaintiff's, the prior appropriator from the Hondo River, his appropriation having originated in 1883, whereas that of the plaintiff did not originate until 1888. 4. The plantiff's appropriation of 1888, took all the water of the Hondo River at the point of its dam. 5. The extent of the beneficial use of water under defendant's appropriation did not, during the twenty years following the original diversion, exceed an amount necessary to irrigate 100 acres. And, by reason of lack of diligence in applying to a beneficial use an amount greater than that, defendant's appropriation must be deemed confined to the amount necessary for 100 acres. 6. It appearing that defendant has, from sources below plaintiff's dam, water sufficient to irrigate said 100 acres, its appropriations must (independent of the defenses of abandonment and statute of

limitations) be considered as satisfied by said water below said dam, and the latter does not, therefore, interfere with defendant's rights, and plaintiff is, therefore, entitled to a perpetual injunction, as prayed, against any disturbance of it. 7. No damages, either actual or punitive, are awarded. There will be a finding of nominal damages. A decree may be drawn in accordance herewith. By inadvertance, probably, there was no finding of nominal damages included in the judgment. From the judgment rendered, the defendant appealed to this court, and plaintiff took a cross-appeal for the failure of the court to award actual or punitive damages.

### OPINION OF THE COURT.

ABBOTT, J.—The findings of the trial court that, under the appropriation of water through which the defendant claims, there was not put to beneficial use for the first twenty years more than enough to irrigate one hundred acres, that there was water enough in the Rio Hondo, from springs between the two dams, to irrigate that amount of land, and, that in 1888 all the water of the Rio Hondo was appropriated by the predecessors in title of the plaintiff, at the point where the dam is, so far as that is a question of fact, are based on substantial evidence, and will not be disturbed by this court. The case of Candelaria v. Miera, 13 N. M. 360 (84 Pac. 1020), in which are collated the previous decisions of this court on that point, has been so many times invoked, and so often followed, that it has become a classic and decisive authority in this jurisdiction. The question in this case is not one of abandonment, on the one side, or adverse possession, on the other. On the facts found by the trial court, there was never a completed appropriation by the defendant's predecessors in title, as against the plaintiff, for more than enough water to irrigate one hundred acres. It is now provided by statute, sec. 42, chap. 49, Laws of 1907, that the failure to beneficially use all or any part of the water for which a right of use has vested, for the purpose for which it was appropriated, or adjudicated, for a period of four years, shall cause the reversion of such

unused water to the public, and it shall be regarded as unappropriated public water. The statute was merely declaratory of the law as it had already been established in this jurisdiction by repeated judicial decisions, except that by those decisions the time within which the application must be made was not any definite period, but a reasonable time, depending, to some extent, on the circumstances of the particular case. In Keeney et al v. Carrillo et al, 2 N. M. 480, a year was held to be a reasonable time for applying the water to use. If the application to beneficial use is made in proper time, it relates back and completes the appropriation as of the time when it was initiated. To hold that a formal appropriation, without use, would hold for twenty years, twice the time necessary to obtain title to real estate by adverse possession in New Mexico, would be contrary to the essential nature of the law of waters as established here, which, as to this feature, has been summed up in the words now embodied in our statute law above referred to: "Beneficial use shall be the basis, the measure and the limit of all right to the use of water." Wiel on Water Rights, secs. 26, 138, 168, and cases cited; especially Millheiser v. Long, 10 N. M. 99; Wheeler v. North Irr. Co., 10 Colo. 582.

The assumption by the appellant that the title to real estate is involved, is not well founded. While water flowing in a natural stream is not the subject of private ownership any more than the fish in it, yet, when it is impounded and reduced to possession by artificial means, it becomes personal property, as the fish do when caught, or, as the common, ownerless air does, when it is liquefied and held in a vessel. Water once reduced to possession and control may be the subject of purchase and sale, or of larceny; and it makes no differencee in that respect, whether the captured fluid is held in a skin or cask, by an itinerant water-vendor, or in the pipes of a modern acqueduct company. Wiel in his work on Water Rights in the Western States, secs. 153 et seq., and 269-282, has treated the subject exhaustively, and, among the decisions he cites, are two of the Supreme Court of the

United States: Achison v. Peterson, 20 Wall. 507, and the dissenting opinion in Spring Valley Water Works v. Schott-ler, 110 U. S. 347. Judge Field, who wrote the opinion of the court in the first case, and the dissenting opinion in the other, dealt with the subject of the ownership of water in his usual illuminating manner. See, also, Hisperia etc. v. Gardner, 4 Cal. App. 357; Bear Lake Co. v. Ogden, 8 Utah 494.

The claim of the appellant, that he was entitled, as riparian owner on the Rio Hondo, to have the water, which the appellee was diverting for purposes of irrigation, flow to his land in the channel of the stream is untenable. The doctrine of prior appropriation with application to beneficial use has definitely and wholly superseded the common law doctrine of riparian rights in many of the jurisdictions in which irrigation is necessary to the growth of crops, and among them is New Mexico. The "Colorado Doctrine," as it is termed, first appears as a dictum in Coffin v. Left Hand Ditch Company, 6 Colo. 443, (1882). It declared that, on the ground of impera-tive necessity, no settler can claim any right aside from appropriation. The decisions of our courts, which had established that doctrine long before it was adopted by statute, have been approved by repeated decisions of the Supreme Court of the United States. Wiel's Water Rights in the Western States, secs. 23, 24, and cases cited; Keeney et al v. Carrillo, 2 N. M. 480, 492, (1883)—clearly por-tended the later decisions of this court, positively affirm-ing the Colorado doctrine, which was especially empha-sized in Albuquerque L. & I. Co. v. Gutierrez, 10 N. M. 197, 240. That case went to the Supreme Court of the United States, and received its approval in 188 U. S. 545, and an earlier New Mexico case on the subject, United States v. Rio Grande D. & I. Co., 9 N. M. 292-303, had been approved under the same title, in 174 U. S. 706. Indeed, riparian ownership, as known to the common law, has never, it would seem, been recognized in New Mexico. As pointed out in Albuquerque L. & I. Co. v. Gutierrez, 188 U. S. 545, by the Mexican law in force here at the time the United States acquired the territory, the use of

the water of the streams was not limited to riparian lands, but extended to others, subject to regulation and control by the public authorities. And the Mexican law, as well as the law of Indian tillers of the soil, who preceded the Spaniards here, as it may be gathered from the ruins of their irrigation systems, did but recognize the law of things as they are, declaring that such must, of necessity, be the use of the waters of streams in this arid region. Albuquerque L. & I. Co. v. Gutierrez, supra, is, also, conclusive against the appellant's contention that the appellee, because of its being a corporation and a mere purveyor of water to be used on the lands of others, had not the right to appropriate the water in question.

The question naturally next in order is, whether the appellant is right in his contention that his motion to dissolve the preliminary injunction granted in the cause, should have been sustained, for the reason, stated broadly, that no proper ground for equitable relief existed. The preliminary injunction is no longer really in question, since a permanent injunction was issued in place of it. But we prefer to assume, what does not clearly appear in the brief of the appellant, that the argument against the preliminary injunction is meant to apply to the permanent injunction as well. It appeared that the plaintiff had undertaken to supply water to about two hundred farmers, some of them at lands thirty-five miles away, for the purpose of irrigation, and that it would be unable to perform its agreements with them, if it should be deprived of the water which the defendant was taking for his own use. Clearly, that would amount, not merely to the loss of a certain amount of water for which compensation could be given in a suit for damages, but to injure the plaintiff's business so seriously as fairly to be considered irreparable. There can be no doubt that courts of equity should interfere to prevent such injury, and that without requiring every one injured to join in the action instituted by one to whom the injury is immediate. And, where the damage of injury is imminent, a preliminary injunction should be granted. 22

Cyc. 765-6, 771-2, and cases cited; especially Diffendal v. Virginia Midland R. R. Co., 86 Va. 459; Wiel on Water Rights 198; Medano Ditch Co. v. Adams, 68 Pac. 341, (Colo). The evidence was not so clear and explicit as to require a finding of more than nominal damages. In its complaint the plaintiff alleged that the defendant "tore out and removed a portion of its dam and head-gate," and unlawfully diverted and appropriated a large volume of water from said dam; and those allegations, as to the facts stated in them, were sustained by evidence, but there was no evidence to show any more than nominal damages by the removal of the flash-boards, which, as a matter of common knowledge, are usually not a part of the structure of a dam, but can be taken out and put back without injury to the dam itself. And there was no evidence of the value of the water itself, for the conversion of which, as personal property, the defendant was probably liable in damages. But the water may have had no value there, except for use in the plaintiff's irrigation system. The plaintiff claimed damages on account of its impaired ability, through the acts of the defendant, to supply water to the farmers it had contracted to supply; and it is urged in the brief for the plaintiff that it was liable to such farmers for failure to perform its agreements with them. It was denied, in behalf of the defendant, that the plaintiff was so liable, as a matter of law; but, however that may be, there is no clear evidence that the plaintiff had failed to keep its agreements with the farmers dependent upon it for water, because of anything done by the defendant. The plaintiff was permitted to show damage to its "property, franchise or interests," distinct from its stock, but offered no evidence that any one had stopped taking water from it, or, that any one had refrained from entering into an agreement to take water from it, because of the diversion of water complained of; although it did offer evidence, apparently convincing to the trial court, that those and other injurious consequences would result, if the wrongful conversion should be continued. Counsel for the plaintiff corporation direct attention to the testimony of its president, on page 151

of the record, and say it is sufficient to establish their claim for compensatory damages. He testified . that the "property, franchise or interests" of the plaintiff, distinct from its stock, were damaged "some four or five hundred dollars a day," while the water was diverted by the defendant, but, on cross-examination, he said, in response to the question: "Who do you mean was damaged that, namely, four or five hundred dollars a day?" "Well, I mean that the company, in being owned by the farmers almost altogether,—without exception, the stockholders are all farmers—and, taking all together, the farmers and stockholders were damaged, and the company in that way." Q. "The farmers and the stockholders were damaged, and that damaged the company?" A. "Well, I think it would, on account of it being all the same." The farmers and stockholders were not made parties to the suit, and their claims for damages, if they had any, were not in question.

If the case had been tried with a jury, the question of exemplary damages would properly have been submitted to it. The brief for the appellee cites 4 Sutherland on Damages 1031, to that effect: "Such damages x x x x x are in the discretion of the jury, where the facts are such as legally to warrant them," says the author. As there was no jury in this case, it was for the court to decide whether the evidence called for exemplary damages, and, although the apparently high-handed course of the defendant, in taking and holding possession of the plaintiff's property, might have warranted the assessment of damages of a punitive nature against him, it would be an invasion of the province of the trial court, if we would undertake to control its judgment on that point.

The judgment, as rendered, may be corrected to include one dollar as nominal damages, in accordance with the finding of the trial court, and, as so corrected, the judgment is affirmed.