877 P.2d 567 (1994)
117 N.M. 760
Steve SANCHEZ and Donald Sandoval, Plaintiffs-Appellants,
v.
Carl CLAYTON and Servicemaster West Central Management Services, Inc., Defendants-Appellees.
No. 21498.
Supreme Court of New Mexico.
June 2, 1994.
*569 James Burke, Santa Fe, Helen Laura Lopez, Albuquerque, for appellants.
M. Christina Armijo, Las Vegas, Seyfarth, Shaw, Fairweather & Geraldson, Lawrence C. DiNardo, Elizabeth H. Skalitzky, Chicago, IL, for appellees.

OPINION
RANSOM, Justice.
Steve Sanchez and Donald Sandoval appeal the dismissal with prejudice of their complaint for wrongful discharge from employment. They asserted claims in tort and breach of contract against Carl Clayton and Servicemaster West Central Management Services. The trial court dismissed the case because it believed that, through settlement of the judgment rendered in a federal civil rights suit against New Mexico Highlands University, Sanchez and Sandoval had received full satisfaction of their damages. Because we find that the Plaintiffs stated a cause of action for compensatory and punitive damages that would not constitute a double recovery, we reverse.
Facts and proceedings. Servicemaster provides management services to health care, *570 educational, and industrial customers in the areas of physical plant operations and maintenance, housekeeping, food service, laundry and linen care, materials management, and clinical equipment maintenance. Servicemaster enters into contracts with its customers requiring it to provide on-site management personnel who direct, supervise, manage, and train employees of the client institution. In 1987, Servicemaster entered into such a contract with Highlands to manage its physical plant. Clayton was the on-site manager provided by Servicemaster. Sanchez was a locksmith and Sandoval a purchasing agent at the physical plant, and both were coaches for the Highlands wrestling team.
Sanchez and Sandoval complained to the Highlands Board of Regents that Servicemaster was being paid $240,000 per year for the same services that a Highlands employee had previously provided for only $26,000. After signing a petition requesting a formal inquiry into the reasons for the contract, Sanchez and Sandoval were fired from their jobs on the premise that their positions had been reorganized. They filed suit in federal court against the president, vice president, and personnel director of Highlands for violation of their civil rights. Sanchez v. Sanchez, 777 F.Supp. 906 (D.N.M.1991). Sanchez and Sandoval moved to join Clayton and Servicemaster as defendants, but the latter successfully resisted the motion, arguing that because they were not acting under color of state law there was no federal jurisdiction over them in the civil rights case. Clayton testified in the federal suit that, upon instruction by a Highlands attorney, he had signed a false affidavit concerning the alleged reorganization. Sanchez and Sandoval subsequently brought suit against Clayton and Servicemaster in state district court. They alleged civil conspiracy, tortious interference with their employment contract with Highlands, and breach of the contract between Servicemaster and Highlands, of which they were third-party beneficiaries.
The federal jury found that Highlands employees had violated Plaintiffs' First Amendment right of free speech and Fifth Amendment right to due process and awarded a total of $180,000 in compensatory and $400,000 in punitive damages. The jury had been instructed to consider the nature, extent, and duration of any emotional injuries suffered by Plaintiffs and any emotional distress, anxiety, pain and suffering, or mental anguish experienced in the past and reasonably certain to be experienced in the future, as well as the value of lost earnings and the present cash value of earning capacities reasonably certain to be lost in the future (and in Sandoval's case, the present value of his retirement benefits). The court also awarded $170,000 in attorney's fees. Highlands appealed from the judgment and Plaintiffs cross-appealed from the court's denial of prejudgment interest. In June 1992, Highlands, Sanchez, and Sandoval settled the case for $700,000. They executed a release of judgment wherein Sanchez and Sandoval insisted on a clause that stated:
[T]his release ... is not intended to release or absolve Servicemaster ... or Carl Clayton from any liability ... or damages... arising from the termination of plaintiffs and presently pending in the case of [Sanchez v. Clayton.].
Following the settlement in the federal case, Clayton and Servicemaster moved for and were granted summary judgment in the state case. The trial court concluded that "the judgment obtained by Sanchez and Sandoval in the federal court against the University Defendants was paid" and that dismissal of the complaint with prejudice would be appropriate under the principle against double recovery set forth in Vaca v. Whitaker, 86 N.M. 79, 83, 519 P.2d 315, 319 (Ct.App. 1974), which the district court summarized as follows:
A plaintiff is entitled to but one compensation for his loss and satisfaction of his claim prevents its further enforcement. In effect, where payment of the judgment in full is made by the judgment debtor, the plaintiff is barred from further action against another who is liable for the same damages.
Plaintiffs' counsel conceded at oral argument before this Court that, although the theory of recovery is different, the Plaintiffs are seeking the same compensatory damages in the *571 state action as were awarded in the federal action.
Neither McConal nor Vaca resolve the issue in this case. To the extent a judgment for damages is paid by one or more of the judgment debtors, we agree that a claim for the same damages against any other person is extinguished regardless of the theories upon which the respective claims for relief are based. Conversely, a party's liability for proportionate fault is unaffected by the injured party's settlement with others who are severally liable for their own proportionate fault. Wilson v. Galt, 100 N.M. 227, 232, 668 P.2d 1104, 1109 (Ct.App.), cert. denied, 100 N.M. 192, 668 P.2d 308 (1983). Liability for proportionate fault is a liability for a distinct part of the damages and not for the same damages that may be apportioned to others. With respect to tortfeasors who are jointly and severally liable, a settlement with one tortfeasor reduces the claim against other tortfeasors in the amount of the consideration paid or in any greater amount as may be provided in the release. NMSA 1978, § 41-3-4 (Repl.Pamp.1989) (stating effect of release under the Uniform Contribution Among Tortfeasors Act). In Gallegos v. Citizens Insurance Agency, 108 N.M. 722, 730, 779 P.2d 99, 107 (1989), we said,
Regarding joint contract liability, we likewise do not reach or decide here whether we would follow the common law that a release of one joint obligor on a contract operates to release all other obligors or whether we would adopt the modern view that where two or more obligors are jointly liable for breach, a release of one does not necessarily release the other; whether the other is released depends upon the intent of the parties and whether the injured party has received full satisfaction.
Although argued as being pivotal to this case, we believe McConal Aviation v. Commercial Aviation Insurance Co., 110 N.M. 697, 799 P.2d 133 (1990), is inapplicable. The Court in McConal did not apply any of the above-described principles, apparently because the Court determined that an insurance broker making a prejudgment settlement of a negligence claim was neither a joint tortfeasor nor a joint obligor under a contract.
In McConal an insurance broker agreed to obtain a property damage policy for plaintiff's aircraft. Accordingly, an insurance company issued a binder to plaintiff insuring his aircraft for one month and requested that plaintiff fill out and submit an application for insurance before the binder expired. Plaintiff completed the paperwork and forwarded it to the broker. The broker failed to forward the paperwork to the insurance company. The aircraft crashed. The insurance company denied liability to the plaintiff, pointing the finger at the broker. The broker claimed that it was not responsible and that, at least by implication, it had not failed in its duty to procure property damage insurance from the insurer. Id. at 698, 799 P.2d at 137. Plaintiff sued the broker and the insurance company, and before trial he reached a $40,000 settlement agreement with the broker. At trial the jury returned a verdict of $65,000 against the insurance company. The insurance company filed a motion seeking to credit the judgment with the $40,000 settlement with the broker. The trial court denied the insurance company's motion and the insurance company appealed. Id. at 698-99, 799 P.2d at 137-38.
On appeal, a plurality of this Court concluded that had McConal's claim against the broker also gone to the jury it well may have awarded him additional damages. Id. at 699, 799 P.2d at 138. Based on this conclusion, the plurality relied on principles of collateral source and the encouragement of settlements to deny an offset of the broker's settlement from the judgment awarded against the insurer. Id. at 700-01, 799 P.2d at 136-37. In a special concurrence, Justice Montgomery, disagreeing with the plurality's conclusion, stated:
The plurality speculates that, had the claim against [the broker] gone to the jury it might well have awarded McConal additional damages. However, there is no indication that the jury would have done so. McConal sued [the insurance company] for the costs of repairing its airplane, transportation and storage charges, and interest on a loan. The jury's verdict awarded *572 McConal only slightly more than the requested damages. Although McConal refers in its brief to other amounts which it might have claimed from [the broker], we are pointed to nothing in the record indicating that McConal's loss was other than the single, indivisible, unitary loss which [the insurance company] alleges it was.
Id. at 701-02, 799 P.2d at 137-38 (Montgomery, J., specially concurring).
It is apparent that the two member plurality finessed the "same damages" distinction in denying the offset, but not Justice Montgomery:
Under these circumstances it does not seem unreasonable to require the insurer... to pay what it contracted to pay and to allow the insured ... to keep what the [broker] ... voluntarily contributed in order to settle its alleged [tort] liability.
....
Under the policy of the collateral source rulethat the "windfall" is to be allocated to the innocent claimant rather than the arguably culpable defendant who a jury has determined breached its contract  I concur in giving the plaintiff the "duplicate recovery" realized in this case.
Id. at 703-04, 799 P.2d at 139-40. Thus, the McConal Court, having been unable to concur on the factual basis for a "same damages" rationale, did not rule on the applicability or effect of that doctrine. Consequently, we understand McConal to hold that the collateral source rule applies to the prejudgment settlement of a claim involving neither a joint tortfeasor nor a joint obligor under a contract.
Defendants urge application of the principle that "when a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforceable claim against any other obligor who is responsible for the same loss." Restatement (Second) of Judgments § 50 cmt. d (1982); see also Vaca, 86 N.M. at 83, 519 P.2d at 319. While we agree that this is a sound principle, it applies only to an award of compensatory damages ("the measure of a loss"), and then only to the extent that a judgment is paid. Punitive damages do not measure a loss to the plaintiff, but rather punish the tortfeasor for wrongdoing and serve as a deterrent. See SCRA 1986, 13-1827 (Repl.Pamp.1991) (jury instruction defining purposes of punitive damages); Sanchez v. Dale Bellamah Homes of New Mexico, Inc., 76 N.M. 526, 531, 417 P.2d 25, 29 (1966) (stating that the purpose of punitive damage recovery is punishment of the tortfeasor, not compensation of the victim). Servicemaster states that "[a]ppellants litigated their losses and received a judgment of compensatory and punitive damages, which has been satisfied." This statement ignores the principle, however, that punitive damages against two or more defendants must be separately determined, see Gallegos, 108 N.M. at 728, 779 P.2d at 105. The question of punitive damages against Defendants has not been litigated.
An award for punitive damages must be supported by an established cause of action. Defendants argue that, under Gonzales v. Sansoy, 103 N.M. 127, 129, 703 P.2d 904, 906 (Ct.App.1984), "[a]n award of punitive damages must be supported by an award of compensatory damages." Defendants also assert that an Illinois case holds that a plaintiff who has been fully compensated for actual damages cannot maintain an action solely for punitive damages against other defendants. See Thrall Car Mfg. Co. v. Lindquist, 145 Ill.App.3d 712, 99 Ill.Dec. 397, 401, 495 N.E.2d 1132, 1136 (Ct.1986). Thrall may be distinguished because, in that case, the court first held that the plaintiff had no legal basis for a cause of action against the defendants. Id. 99 Ill.Dec. at 400-01, 495 N.E.2d at 1135-36. In dicta, the court stated that the plaintiff had been compensated fully for its actual damages by a defendant against whom a legal cause of action did lie, which was an additional reason why the cause of action for punitive damages alone could not stand. Id. 99 Ill.Dec. at 401, 495 N.E.2d at 1136. Although Thrall did not state so explicitly, we believe that the actual reason no cause of action for punitive damages could be pursued in that case was because of the court's first holdingthe plaintiff could not state a cause of action against the defendant.
We believe that

*573 [t]he most reasonable interpretation of the supposed actual damages requirement is that it is really a defective formulation of an entirely different ideathat the plaintiff must establish a cause of action before punitive damages can be awarded.... Once the facts accepted by the trier show a valid cause of action, however, there seems no reason to deny punitive damages merely because the plaintiff's damages are not pecuniary, or because the jury awards nominal damages, or because it lumps all damages under the punitive label. Indeed, if the defendant's conduct otherwise warrants punitive liability, the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages.
1 Dan B. Dobbs, Law of Remedies § 3.11(10), at 515-16 (2d ed. 1993). We have followed this general principle in New Mexico by allowing punitive damages even when supported only by an award of nominal damages. See Green Tree Acceptance, Inc. v. Layton, 108 N.M. 171, 174, 769 P.2d 84, 87 (1989) ("Punitive damages are to be awarded when actual or nominal damages are inadequate to satisfy the wrong committed." (Emphasis added.)); Crawford v. Taylor, 58 N.M. 340, 343, 270 P.2d 978, 979 (1954) (allowing a cause of action only requesting punitive damages because "the alleged malicious interference by defendant with plaintiff's right ... would sustain an award to plaintiff of nominal damages"); Hagerman Irrigation Co. v. McMurry, 16 N.M. 172, 183-84, 113 P. 823, 826 (1911) (holding that plaintiff who could not prove actual damages nonetheless could be awarded nominal and punitive damages). "Nominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." Restatement (Second) of Torts § 907 (1979) (emphasis added). The common thread in Crawford and Hagerman is that both plaintiffs established a cause of action against the defendant for which they were entitled to punitive damages even though they were not entitled to compensatory damages.
The key to determining whether punitive damages may be awarded absent actual or compensatory damages, therefore, is the nature of the case. See Ault v. Lohr, 538 So.2d 454, 457 (Fla.1989) (Ehrlich, J., specially concurring) (stating that because the tort was battery, which did not require proof of actual damages, "punitive damages could properly be awarded even absent an award of compensatory damages"). In actions based on negligence, neither nominal nor punitive damages may be awarded without proof of actual damages because liability does not attach to negligent acts that do not result in actual harm or damage. See, e.g., Jensen v. Allen, 63 N.M. 407, 409, 320 P.2d 1016, 1017 (1958) (stating in negligence action that without damage, there is no cause of action); Restatement (Second) of Torts § 907 cmt. a ("If actual damage is necessary to the cause of action, as in negligence, nominal damages are not awarded.").
In suits based on intentional torts, however, no allegation of actual damages is necessary to establish a cause of action. See, e.g., Ruiz v. Varan, 110 N.M. 478, 483-84, 797 P.2d 267, 272-73 (1990) (affirming damages award of $5000 for tort of abuse of process although no actual damages had been proved). In such cases, the jury may award nominal damages to acknowledge that the cause of action was established and punitive damages to punish the wrongdoer for violating the rights of the victim. See Ruiz, 110 N.M. at 483, 797 P.2d at 272 ("The award of nominal damages is made as a judicial declaration that the plaintiff's right has been violated." (quoting Charles T. McCormick, Handbook on the Law of Damages § 20 at 85 (1935)); cf. Hagerman, 16 N.M. at 183-84, 113 P. at 826 (acknowledging that defendant was liable for wrongfully converting plaintiff's water, Court remanded for entry of judgment awarding one dollar in nominal damages and stating that punitive damages would properly have been submitted to the jury had it been a jury trial).
We overrule Christman v. Voyer, 92 N.M. 772, 595 P.2d 410 (Ct.App.1979). There, the Court of Appeals, despite acknowledging that this Court has held that punitive damages may be supported by an award of nominal damages, declared (without further analysis) *574 that a plaintiff also had to establish actual damages in order to recover punitive damages in a case alleging tortious interference with contract. Id. at 775, 595 P.2d at 413.
The determinative issue in this case is whether Plaintiffs can state a cause of action under which they would be entitled to compensatory or nominal damages against Defendants. Whether the prior judgment for compensatory damages may have been paid in full is not determinative in deciding that punitive damages may be awarded against Defendants. All the law requires is that "[t]he conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory [or nominal] damages were allowed." Gonzales, 103 N.M. at 129, 703 P.2d at 906 (quoting Traylor v. Wachter, 227 Kan. 221, 607 P.2d 1094, 1098 (1980)) (emphasis added). In another case, the Court of Appeals stated correctly that even after compensatory damages have been fully satisfied by the settlement of a judgment, a plaintiff seeking punitive damages against a joint tortfeasor may bring suit to recover those damages in a separate action after dismissal of that joint tortfeasor from the original suit has been reversed on appeal. Sierra Blanca Sales Co. v. Newco Indus., 88 N.M. 472, 474-75, 542 P.2d 52, 54-55 (Ct. App.1975), rev'd on other grounds, Fortuna Corp. v. Sierra Blanca Sales Co., 89 N.M. 187, 189, 548 P.2d 865, 867 (1976) (reversing because the issue of punitive damages was otherwise improperly before the district court).
Collateral estoppel has limited effect. Principles of collateral estoppel have limited application in the type of successive litigation contemplated here. The defendant in successive litigation certainly would not be precluded from contesting whether plaintiff has stated or proved a claim for relief. The plaintiff likely would be estopped from the recovery of compensatory damages greater than awarded in, but remaining unpaid from, a prior judgment, while the defendant would not be precluded from contesting damages. If the jury is not instructed to find compensatory damages (so that the court may determine the amount of any damages remaining unpaid from a prior judgment, or so that the jury may determine the relative amount of punitive damages), then there must be a stipulated instruction to the jury as to the actual damages to which any punitive damages award should relate. See Flores v. Baca, 117 N.M. 306, 315, 871 P.2d 962, 971 (1994) (discussing need to instruct jury that punitive damages must be reasonably related to compensatory damages awarded by other jury).
Proportion of compensatory damages not paid in settlement may be recovered. Plaintiffs argue that the shortfall between the judgment rendered and the settlement received should be allocated to the compensatory damages. The plaintiff settling the judgment, however, has an obligation to establish what compensatory damages he is foregoing in the settlement if he later wishes to show a right to recover compensatory damages in successive litigation. In the case at bar, because Plaintiffs specifically reserved their cause of action against Defendants, we cannot presume that they intended to extinguish by settlement what they had reserved. We find that the fairest resolution is to prorate the $50,000 difference between the $750,000 judgment and the $700,000 settlement. Plaintiffs have received a 700/750th part of the compensatory award of $180,000. Plaintiffs, therefore, may recover a 50/750th share (or up to $12,000) in compensatory damages from Defendants if they prove that Defendants are liable for compensatory damages.
Conclusion. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion. If Plaintiffs are successful in establishing a cause of action for either nominal or compensatory damages, they may recover unpaid compensatory damages and also may recover punitive damages.
IT IS SO ORDERED.
MONTGOMERY, C.J., and FROST, J., concur.