(January 8, 1998)

■ JOSEPH CALAVANO, Respondent, v NEW YORK CITY HEALTH & HOSPITALS CORP. et al., Appellants. [667 NYS2d 351] —Order, Supreme Court, New York County (Walter Tolub, J.), entered June 26, 1996, which granted plaintiff's motion to vacate and set aside the stipulation of settlement entered into between the parties and to restore plaintiff's action to the trial calendar, unanimously reversed, on the law and the facts, without costs, the motion denied and the stipulation of settlement reinstated.

Plaintiff commenced this personal injury action to recover damages for injuries sustained in a 1990 automobile accident. Specifically, after the accident he was diagnosed as suffering from a herniated disk at the L4-L5 level, for which he was provided physiotherapy that appeared to ameliorate the pain. Discovery was conducted and the note of issue was filed in 1993. Medical records indicate that plaintiff started feeling back pain resulting from the existing injury again in August 1995, which fact is supported by plaintiff's physician's affidavit.

An MRI was conducted, indicating the herniated disk, and documentation by plaintiff's own physician indicates that he was treated for a left inguinal hernia at Elizabeth General Hospital during late summer.

On September 12, 1995, the parties appeared in chambers for a settlement conference at which time they agreed upon a settlement figure of $30,000. Although no final settlement was placed on the record, plaintiff's affidavit and counsel's affirmation confirm the settlement terms agreed upon in chambers. Plaintiff signed a stipulation of settlement and a general release dated September 13, 1995, which was duly notarized on that date. The form of the release was the standard Blumberg form (*see, Touloumis v Chalem*, 156 AD2d 230, 232) releasing the named releasees from " 'all actions' ", etc., without limitation, and precluding oral modification. The documents were then sent to defendants for a mutual release.

On October 8, 1995, plaintiff suffered apparently severe back pain that required emergency surgery on October 10, 1995 to relieve a herniated disk at the L4-L5 level of his back. By attorney's letter dated November 27, 1995, plaintiff informed defendants of the surgery, claimed that the surgery was necessitated by the 1990 accident, and indicated that he would seek to set aside the settlement and restore the matter to the trial calendar. The settlement check, for present purposes, was neither received nor cashed by plaintiff, nor was a release executed by defendants. Plaintiff moved by order to show cause dated May 1, 1996, to set aside the settlement, claiming that the settlement was entered by all parties under mutual mistake. Plaintiff did not deny prior knowledge of these specific injuries, nor that they had been caused by the subject accident, facts which, in any event, are established in the record. Rather, he argued mistake in that, prior to signing the release, he had not realized the severity of the injuries or that surgery would be required.

On this basis, the court below, relying on *Pokora v Albergo* (130 AD2d 473), vacated the settlement and restored the matter to the calendar. That order is now on appeal.

Initially, the court erred in its reliance on *Pokora (supra)*. In *Pokora*, the plaintiff had no knowledge that he sustained a herniated disk at the time he entered into the settlement agreement, a situation which is clearly distinguishable from this case. Therefore, *Pokora* does not govern the present analysis.

It is well recognized that " '[s]trong policy considerations favor the enforcement of settlement agreements' " (*Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 616). Therefore, a

release may not be treated lightly since "[it] is a jural act of high significance without which the settlement of disputes would be rendered all but impossible. It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice" (*Mangini v McClurg*, 24 NY2d 556, 563). The burden falls on the releasor who tries to retract a release to demonstrate both that the injury was unknown at the time of the release and that the release was limited rather than general, in order to establish that the parties had not intended the literal effect of the release (*supra*, at 568).

Despite the infortuitous timing of plaintiff's discovery of his need for surgery, holding the parties to the terms of their settlement, when plaintiff had prior knowledge of the particular injury, does not impose a grave injustice on plaintiff. Moreover, the recognized grounds for vacatur of a settlement agreement, namely duress, illegality, fraud or mutual mistake (*supra*, at 563), are not applicable under the facts of this case. Although plaintiff does allege mutual mistake, it bears repeating that there was no mistake as to the injuries, but only an uncertainty as to potential consequence of the injuries. Noting the "sharp distinction between injuries unknown to the parties and mistake as to the consequences of a known injury", the Court of Appeals has directed that, in the latter case, "the release will stand" (*supra*, at 564; *see, Touloumis v Chalem*, *supra*, at 232).

To give force to plaintiff's argument, that a "mistake" regarding the potential for future surgery from a known injury may be a basis to undo the settlement, would necessarily undermine the very finality that settlements in personal injury cases require.

Nor do we read the subject agreement as providing for other than a broad general release. The language of the release is absolute and unequivocal (*see, Touloumis v Chalem, supra*), so that plaintiff has not met his burden of demonstrating the parties' limited intentions in entering the agreement (*Mangini v McClurg, supra*).

We also reject plaintiff's contention that the agreement was executory only, until such time as performance, manifested by tendering and encashment of the settlement check, was undertaken. Rather, plaintiff's signature equates with execution of the agreement and at the moment of that signature and assent by the defendants, those defendants assumed a binding obligation to tender the check. Plaintiff's unilateral decision with regard to acceptance or encashment of the settlement check

does not modify the clear and binding terms of the written agreement.

Nor does the failure of the defendants to sign the stipulation or to execute their own release of plaintiff change the result. First, plaintiff is the party being held to the extant release, so that his own signature, ratifying the terms of the settlement, is the relevant consideration. Second, under CPLR 2104, a stipulation binds the signatory, without regard to its adversary's countersignature. Third, neither the stipulation of discontinuance nor the release was further conditioned on any act of any party, and the stipulation itself specifically provided for filing without any further notice. Hence, in this additional sense, the language of the documents bespeaks finality.

Since the focus is on the clear language (*see, Rocanova v Equitable Life Assur. Socy., supra,* at 616) of the written release and stipulation signed by plaintiff (*see,* CPLR 2104) in determining the intent of the parties concerning the agreement, rather than on whether a ministerial act such as filing the agreement with the court had been undertaken, the fact that the IAS Court had not yet entered a final order approving the settlement (*see, Mangini v McClurg, supra; cf., Matter of Matinzi v Joy,* 96 AD2d 780, *affd* 60 NY2d 835) does not change the validity of the agreement between the parties. Concur— Rosenberger, J. P., Wallach, Rubin, Tom and Colabella, JJ.