Andrias, J.,
dissents in a memorandum as follows: Because I believe that there was a binding settlement of plaintiffs claims against defendant Rivlab Transportation Corp. (Rivlab), which plaintiff sought to avoid simply because she changed her mind after she was told that she could get more money, I respectfully dissent and would reverse the order which denied the motion of nonparty appellant law firm Jeffrey A. Aronsky, PC. (Aronsky) for an order enforcing the settlement and setting the legal fees to which Aronsky is entitled.
On August 11, 2010, plaintiff was hit by a bus owned by Rivlab. She retained Aronsky to represent her on a one-third contingency fee basis, and Aronsky filed this action that month. On October 1, 2010, after reviewing the medical records, a representative of Rivlab’s insurance carrier sent Aronsky a letter confirming a conversation in which the carrier offered to tender the policy limit of $1 million in full settlement of plaintiff’s claims.
On October 5, 2010, Aronsky and a structured settlement attorney visited plaintiff, who signed a general release in favor of Rivlab and its carrier, which released them from all causes of action and claims she had or may have against them, “[i]n particular for injuries sustained on August 11, 2009 [sic].” Plaintiff now claims that she felt pressured to sign the release and an *454 other unidentified document by Aronsky’s insistence that she settle and because the structured settlement attorney told her that his proposals would only be good for a week. Plaintiff alleges that the next day, after she was told by “people” that she should not be pressured into settling, she called Aronsky and told him that she had changed her mind and that he should not mail out the settlement documents without confirmation from her.
Nevertheless, on October 12, 2010, plaintiff signed a hold harmless agreement prepared by the carrier. On or about November 18, 2010, in furtherance of the settlement, the carrier sent Aronsky affidavits of no further insurance, which Aronsky reviewed with plaintiff. Plaintiff maintains that she advised Aronsky at that meeting that she still had not decided whether to settle, and that she needed to do her own research. Aronsky maintains that the only reason he did not forward the settlement documents to the carrier at that point was because plaintiff had told him that “she needed time until after the Thanksgiving holidays to decide if she would structure the settlement.”
Plaintiff states that because of her dissatisfaction with Aronsky and her feeling that she was entitled to more than the $1 million offer, she hired new attorneys to represent her. By letter dated December 6, 2010, plaintiffs new counsel provided Aronsky with a letter from plaintiff, which advised Aronsky not to do any further work and to forward the file to them. The letter also asked that Aronsky execute a Consent to Change Attorneys. By fax dated December 9, 2010, plaintiffs new counsel advised Aronsky that plaintiff was not accepting the $1 million offer and that he should not send in the release. Aronsky then moved for an order enforcing the settlement and fixing his fee.
New York has a strong public policy of encouraging the resolution of disputes. Stipulations of settlement “are favored by the courts and not lightly cast aside” (Hallock v State of New York, 64 NY2d 224, 230 [1984]). “[A] change of heart is insufficient” (Sontag v Sontag, 114 AD2d 892, 893 [2d Dept 1985], lv dismissed 66 NY2d 554 [1986] [internal quotation marks omitted]), and a settlement agreement will not be set aside merely because the plaintiff, upon reevaluation, has decided that the claim is worth more (see Muller v City of New York, 113 AD2d 877 [2d Dept 1985]).
General releases are interpreted and upheld by the courts consistent with this policy (Calavano v New York City Health & Hosps. Corp., 246 AD2d 317, 318 [1st Dept 1998]). Accordingly, in the absence of cause sufficient to invalidate a contract, such *455 as fraud, collusion, mistake or accident, it was an improvident exercise of discretion for the motion court to vacate a valid release just to allow plaintiff to have her day in court after she was told that she could get more money (see generally McCoy v Feinman, 99 NY2d 295 [2002]).
Plaintiffs general contention that she felt pressured to sign the release is insufficient. Her claim that she withdrew her consent to the settlement the day after she executed the release is unsubstantiated and inconsistent with her execution, a week later, of the carrier’s hold harmless agreement, which states, in relevant part: “Releasor hereby declares that the terms of this Release have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final settlement of any and all claims, disputed or otherwise, on account of injuries and/or damages related to Claims set forth herein, and for the express purpose of precluding forever any further additional claims against the Release [sic] arising out of the aforesaid incident, accident or occurrence.”
I am not persuaded by plaintiffs argument that the release is not a binding agreement. CPLR 2104 states in relevant part that “[a]n agreement between parties or their attorneys relating to any matter in an action ... is not binding upon a party unless it is in a writing subscribed by him or his attorney.” In order for a writing to be enforceable as a settlement agreement under CPLR 2104, it must “incorporate all the material terms of the settlement” (Bonnette v Long Is. Coll. Hosp., 3 NY3d 281, 285 [2004]; Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]). Here, plaintiff signed two documents, on two separate occasions, a week apart, that unambiguously release her claims against defendant in exchange for $1 million. The release makes clear that payment in the amount of $1 million would be from Rivlab and its insurer, and that those entities would be jointly and severally responsible for the payment
The majority believes that there was no binding settlement because the release was not delivered to Rivlab or its carrier, who were not informed that the offer had been accepted. However, under the circumstances before us, once plaintiff signed the release and the hold harmless agreement, she was bound by the settlement terms, pursuant to CPLR 2104, without the need for delivery or filing of the settlement documents (see Calavano, 246 AD2d at 318-320).
Releases, like stipulations, are contracts and are construed according to the same general principles of contract law (see Shklovskiy v Khan, 273 AD2d 371 [2d Dept 2000]). Where the *456 parties have not agreed that delivery is essential, “[a] binding contract . . . may be made without a physical delivery of the instrument evidencing the contract” and “[a]ny evidence that shows that the parties to a written instrument intend that the same should be operative and binding upon them is sufficient in an action to enforce its provisions” (Morgan Servs., Inc. v Abrams, 21 AD3d 1284, 1285 [4th Dept 2005] [internal quotation marks omitted]). Here, there was no requirement in the release or hold harmless agreement obligating plaintiff to physically deliver them to Rivlab or its carrier in order to enforce them (see Florimon v Xianglin Xu, 97 AD3d 532 [2d Dept 2012]). The agreement to settle is evidenced by the carrier’s letter confirming the conversation with Aronsky in which it agreed to tender the policy, by plaintiffs execution of the release and, a week later, of the hold harmless agreement prepared by the carrier, and by the carrier’s submission to Aronsky of the affidavits of no further insurance.
The failure to complete the steps required to consummate the settlement was the result of the motion practice which is the subject of this appeal. Rivlab continues to stand ready to proffer the policy limits of $1 million to plaintiff and to take the necessary steps to fully comply with all of the requisites enumerated in CPLR 5003-a.
Given that there was a binding settlement of the action, Aronsky is entitled to a charging lien for the agreed upon one-third contingency fee (see Calabro v Board of Educ. of City of N.Y., 39 AD3d 680, 681 [2d Dept 2007]; McAvoy v Schramme, 238 App Div 225 [1st Dept 1933], affd 263 NY 548 [1933]). I agree with the majority that there is no need for a hearing because plaintiff did not make a prima facie showing that Aronsky was discharged for cause (see Friedman v Park Cake, Inc., 34 AD3d 286 [1st Dept 2006]). Evidence of a general dissatisfaction with an attorney’s performance or a difference of opinion between attorney and client does not establish that the attorney was discharged for cause absent some evidence that the attorney failed to properly represent the client’s interest (see Costello v Kiaer, 278 AD2d 50, 50 [1st Dept 2000]). Neither the December 6th nor December 9th letter states that Aronsky was being discharged for cause and plaintiff’s self-serving allegations that she was misled by Aronsky as to the ramifications of signing the release are not supported by the record. Nor is it unethical for Aronsky to seek to enforce his fee arrangement with plaintiff.
Accordingly, the settlement should be reinstated and Aronsky granted a charging lien fixed at 33V3% of the proceeds of the litigation.