M.H. DETRICK COMPANY, Plaintiff-Appellant, v. CENTURY INDEMNITY COMPANY, as Successor to Insurance Company of North America, *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—97—0027

Opinion filed September 25, 1998.—Rehearing denied October 28, 1998.

Mauck, Bellande & Cheely, of Chicago (Daniel J. Cheely and Paul B. O'Flaherty, Jr., of counsel), and Covington & Burling (Mitchell F. Dolin, Bette M. Orr, and Susan M. Lyons, of counsel), and Dickstein, Shapiro, Morin & Oshinsky, LLP (Mark A. Packman, Bette M. Orr, and Joshua S. Kans, of counsel), both of Washington, D.C., for appellant.

Cohn & Russell, of Chicago (William M. Cohn and Michael J. Baughman, of counsel), and Wilmer, Cutler & Pickering, of Washington, D.C. (Lynn Bregman, Carol H. Fishman, and John Maull, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

This declaratory judgment action involves a dispute over the scope of insurance coverage provided by defendants to plaintiff. On October 16, 1996, the circuit court granted summary judgment in favor of the defendants pursuant to section 2—1005 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—1005 (West 1996). On appeal, plaintiff maintains that: (1) the circuit court erred in finding that a subsequent agreement between the parties superseded and extinguished plaintiff's rights under insurance policies issued by defendants; and (2) the circuit court erred in relying upon evidence of plaintiff's postagreement conduct in granting summary judgment.

For the following reasons, we affirm.

The facts relevant to this appeal are as follows. Plaintiff, M.H. Detrick Company (Detrick), manufacturer and distributor of asbestos-containing products, was sued by a number of parties in the 1980s who alleged injury due to exposure to plaintiff's products. In 1984, plaintiff turned to defendants, Century Indemnity Company, as successor to Insurance Company of North America; Cigna Fire Underwriters Insurance Company, as successor to Aetna Fire Underwriters Insurance Company, and TIG Insurance Company, as successor to Transamerica Insurance Company, for coverage under its insurance policies. In 1988, plaintiff and defendants entered into an agreement that covered all pending and future asbestos-related claims against plaintiff (1988 Agreement). Payment by defendants under the agreement was subject to the total available aggregate limits set forth in the insurance policies. Once that limit was exhausted, the defendant

that provided the policy was excused from further contribution to plaintiff's damages and defense costs. On October 10, 1990, counsel for plaintiff informed plaintiff's excess insurers that plaintiff's primary coverage under the policies provided by defendants was exhausted and that the claims against plaintiff would thereafter be transferred to the excess insurers. The claims were then shifted to the excess carriers, which began payment, and defendants closed their primary policy files.

Defendants, with the exception of Century Indemnity Company, received no further communication from plaintiff regarding primary coverage until 1995 when counsel for plaintiff contacted defendants and maintained that plaintiff had not exhausted its coverage under the insurance policies. Specifically, counsel for plaintiff maintained that the policies' limits were not exhausted because suits involving injuries that occurred during plaintiff's installation of asbestos-containing products were erroneously included in calculating the aggregate limits under the policies. The reasoning behind this position was that the aggregate limits in the policies applied only to claims that would fall under the products hazard category of coverage, and any claim alleging injury occurred before plaintiff relinquished its product, i.e., during installation, would be a general liability claim and not a products hazard claim. Hence, plaintiff alleged that any payments made for installation injuries should not have been included in calculating the aggregate limits under the policies. Defendants rejected this claim, and plaintiff filed the present suit in the circuit court on March 26, 1996. On October 16, 1996, the circuit court granted defendants' motion for summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—1005 (West 1994). This timely appeal followed.

Plaintiff's first argument on appeal is that the circuit court erred in finding that the 1988 Agreement superseded and extinguished plaintiff's rights under the policies issued by defendants.

In granting defendants' motion for summary judgment, the circuit court made the following finding:

"The defense and indemnity agreement supersedes [sic] the insurance policies and resolved fully Detrick's claim for coverage under its primary policies for all asbestos-related cases; that is, all cases against Detrick alleging body [sic] injury on account of exposure to Detrick's asbestos containing product [sic].

The agreement does not mirror the insurance policies. It applies to and sets forth the agreed to maximum indemnity limits that each insurer would be required to pay for; [sic] all asbestos claims against Detrick that allege exposure to Detrick's product without

any regard to whether the claimant's injury occurred before, during, or after relinquishment of Detrick's asbestos-containing product.

\* \* \*

Accordingly, the product hazard definition in the policies is irrelevant because the language in the defense and indemnity agreement is different from and broader than the language in the moving insurers' policies.

\* \* \*

All the asbestos claims against Detrick are encompassed in the plain terms of the parties' agreement which should be enforced according to such terms."

We agree with the circuit court.

■ A trial court may grant a motion for summary judgment when the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996). On appeal, we conduct a *de novo* review of an order granting summary judgment. *Olson v. Etheridge*, 177 Ill. 2d 396, 404, 686 N.E.2d 563 (1997); *Davies v. Grauer*, 291 Ill. App. 3d 863, 867, 684 N.E.2d 924 (1997).

■ A settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law. *Hills of Palos Condominium Ass'n, Inc. v. I-Del, Inc.*, 255 Ill. App. 3d 448, 476, 626 N.E.2d 1311 (1993). Accordingly, a settlement agreement is enforceable if there is an offer, an acceptance, and a meeting of the minds. *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 146, 559 N.E.2d 20 (1997). If there is no ambiguity in the language of a settlement, "the determination of the intent of the parties is governed by the contract language alone." *Haisma v. Edgar*, 218 Ill. App. 3d 78, 87, 578 N.E.2d 163 (1991).

In the present case, we find no ambiguity in the 1988 Agreement. The agreement specifically states:

"1. *Scope.* This Agreement sets forth an arrangement by and among Detrick and the carriers for the allocation and payment of (a) amounts incurred in defending Detrick against Asbestos-Related Cases \*\*\* and (b) amounts which Detrick becomes legally obligated to pay as damages because of Asbestos-Related Cases \*\*\*.

\* \* \*

'Asbestos-Related Cases' are those claims or lawsuits or portions of claims or lawsuits, past, present, or future \*\*\* that seek recovery from Detrick for personal injuries, illnesses, ailments, or diseases of any kind, or death resulting therefrom, or claims for loss of services or loss of consortium \*\*\* which are alleged to have occurred

as a result of exposure to asbestos-containing products allegedly manufactured, sold, or otherwise distributed by Detrick."

Settlement agreements are encouraged and should be given their full force and effect. *Vogt v. Bartelsmeyer*, 264 Ill. App. 3d 165, 171, 636 N.E.2d 1185 (1994). Here, the 1988 Agreement is a valid settlement agreement which provides broader coverage than the insurance policies. Specifically, the 1988 Agreement covers both injuries that resulted from Detrick's products before it relinquished the product and after the product left Detrick's control. Therefore, we find it unnecessary to determine whether defendants erroneously calculated the aggregate limits under the insurance policies, as plaintiff claims. As such, we do not reach the issue of whether injuries incurred during the installation of asbestos-containing products are covered under the products hazard category of coverage. Furthermore, both parties concede that the issue of whether some asbestos-related claims against plaintiff might constitute general liability claims rather than products/completed operations claims is not before this court on appeal.

Plaintiff further maintains that it has coverage rights from defendant Century Indemnity Company (Century) due to an agreement that was executed between plaintiff and Century in 1990 (1990 Agreement).

In 1990, plaintiff and Century, as successor to Insurance Company of North America, entered into an agreement in which Century agreed to provide coverage under three additional policies that were not included in the 1988 Agreement. Similar to the original insurance policies, the 1990 Agreement specifically provided coverage for claims or lawsuits arising under the products hazard and/or completed operations hazard categories. The 1990 Agreement further provided that, in the event that there was an inconsistency between the two agreements, the terms of the 1990 Agreement would control. Plaintiff maintains that, because an inconsistency exists between the two agreements, the 1990 Agreement controls and plaintiff therefore is entitled to further coverage under the 1990 Agreement.

■ Initially, we note that the 1988 and 1990 Agreements must be read together. This conclusion is necessary given the language of the agreements. The 1988 Agreement explicitly recognized that additional acknowledged policies that were not covered by the agreement could have been in existence at the time of signing. Per the terms of the 1988 Agreement, such additional policies were to be incorporated into the 1988 Agreement as though they were part of the original agreement. The 1990 Agreement provided that Insurance Company of North America would recognize the three additional policies and that administration of those policies was to be conducted pursuant to the

terms of the 1988 Agreement. Because the terms of these agreements not only reference one another, but also address the additional policies at issue here, the two agreements must be read together. See *Community State Bank v. Hartford Insurance Co.*, 187 Ill. App. 3d 110, 114, 542 N.E.2d 1317 (1989).

Plaintiff maintains that there is an inconsistency between the 1988 and 1990 Agreements because the 1990 Agreement only covers "claims or lawsuits arising under the products hazard and/or the completed operations hazard." Accordingly, plaintiff argues, the 1990 Agreement should be construed to provide coverage only for the products hazard and/or completed operations hazard categories. Plaintiff then realleges the argument discussed above: that defendant Insurance Company of North America/Century erred in attributing the damages resulting from the installation of plaintiff's product to the total aggregate limit because installation damages are not part of the products hazard and/or completed operations hazard categories. We find plaintiff's argument unpersuasive.

■ As noted above, the 1988 and the 1990 Agreements must be read together, and we find no inconsistency between the agreements. The 1988 Agreement provides coverage for a wide spectrum of claims, including coverage for those claims that fall into the products hazard and/or completed operations hazard categories. As such, the terms of the 1990 Agreement are not inconsistent with the terms of the 1988 Agreement; rather, the terms of the two agreements are consistent with one another, because the scope of the 1988 Agreement includes coverage for the damages covered by the 1990 Agreement. Therefore, we find it unnecessary to determine whether plaintiff has further rights under the three additional policies issued by defendant Insurance Company of North America/Century given that administration of those policies is subject to terms of the 1988 Agreement, which provides broader coverage than the policies.

Plaintiff next asserts that the circuit court erred in relying upon evidence of plaintiff's postagreement conduct in granting summary judgment.

■ Upon determining the terms of a contract, a circuit court must first determine, as a question of law, whether the language of the purported contract is ambiguous as to the parties' intent. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288, 565 N.E.2d 990 (1990). If there is no ambiguity, the interpretation of the contract is a question of law to be determined solely from the terms of the contract itself. *Rakowski v. Lucente*, 104 Ill. 2d 317, 323, 472 N.E.2d 791 (1984); *Countryman v. Industrial Comm'n*, 292 Ill. App. 3d 738, 741, 686 N.E.2d 61 (1997).

■ Here, we find that it was appropriate for the circuit court to recognize that plaintiff had turned to its excess carriers for coverage. In ruling on defendants' motion for summary judgment, the circuit court found the terms of the 1988 Agreement to be unambiguous. The court then found that "Detrick's post-agreement conduct demonstrates that the insurers [sic] payments under the defense and indemnity agreement extinguished further coverage agreement for Detrick's asbestos case." The circuit court then cited instances of plaintiff's postagreement conduct that supported defendants' motion. Specifically, the court cited plaintiff's reliance on the excess insurers after plaintiff acknowledged that the primary coverage by defendants was exhausted.

Summary judgment is inappropriate where the intentions of the parties are subject to explanation by extrinsic evidence. *Pepper Construction Co. v. Transcontinental Insurance Co.*, 285 Ill. App. 3d 573, 576, 673 N.E.2d 1128 (1996). In the present case, however, the intent of the parties is unambiguously set forth in the 1988 Agreement. Thus, the circuit court did not have to rely on extrinsic evidence in reaching its decision. In addition, the circuit court may consider pleadings, depositions, and affidavits when ruling on a motion for summary judgment. *Grot v. First Bank*, 292 Ill. App. 3d 88, 91, 684 N.E.2d 1016 (1997). At most, the court's comments appear to be a reiteration of the well-founded principle that an insured party may only approach its excess carriers for coverage after the insured party has exhausted its primary coverage. See *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 653-54, 643 N.E.2d 1226 (1994); *Missouri Pacific R.R. Co. v. International Insurance Co.*, 288 Ill. App. 3d 69, 80-84, 673 N.E.2d 801 (1997). Once the applicable indemnity limits of a policy are exhausted by the payment of judgments or settlements, no insurance is afforded by that policy. We therefore hold that when an insurer has properly exhausted its policy limits by the payment of judgments and/or settlements, it is no longer obligated to defend or indemnify plaintiff, whether such actions are pending at the time of exhaustion or commenced thereafter.

Indeed, this case does not represent a situation where the plaintiff requests declaratory judgment in order to compel the defendant insurance company to provide coverage after the insurer has declined to defend or indemnify the insured. Rather, defendants in the present cause fully complied with the terms of the 1988 and 1990 Agreements and provided plaintiff with coverage to the limits of their policies. We do not find plaintiff's attempt to return to the primary carriers for further coverage to be persuasive. Furthermore, we note that if summary judgment had not been granted, the excess carriers could have

intervened in this case based on an assertion that they should not have been required to pay those claims that were attributable to the period of installation.

We have also considered all further contentions of plaintiff and find that no additional discussion is necessary.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and GREIMAN, J., concur.