This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41640**

**ANDRA MICHELLE COBB;**
**JOHN DAY, Personal Representative**
**of the Wrongful Death ESTATE OF PAUL**
**DAVID COBB, Deceased,**

Plaintiffs-Appellees,

v.

**SAPPHIRE AVIATION LLC; THE ESTATE OF**
**JAMIE COLMAN DODD; STANLEY L. BLEND;**
**JOHN BUDD; GRAHAM BROOKS, in their**
**capacities of independent Co-Executors of the**
**ESTATE OF CHARLES RYLAND BURNETT III,**

Defendants,

and

**MARTHA NELL COBB,**

Plaintiff,

**GORDON REES SCULLY MANSUKHANI, LLP**
**and ROBERT BRAGALONE, ESQ.,**

Interested Parties-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Matthew Wilson, District Court Judge**

The Crecca Law Firm, P.C.
Alexander D. Crecca
Albuquerque, NM

Brian Lauten, P.C.

Brian Lauten
Dallas, TX

for Appellee Andra Michelle Cobb

Durham, Pittard & Spalding, LLP
Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Santa Fe, NM

Lyons & Simmons, LLP
Michael P. Lyons
Christopher J. Simmons
Dallas, TX

for Appellee John Day as the Personal Representative
of the Wrongful Death Estate of Paul David Cobb

Holland & Hart LLP
Larry J. Montaño
Santa Fe, NM

for Appellants

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     This case arises from a helicopter crash in which Plaintiff Paul David Cobb (Paul) was killed and his daughter, Plaintiff Andra Michelle Cobb (Andra), was injured. At issue is a dispute over attorney fees between the attorneys representing Paul's estate in a wrongful death action and the attorneys representing Andra in her personal injury action. Andra obtained a $7 million settlement in the case, and, alongside Plaintiff John Day, the personal representative (PR) of the wrongful death estate of Paul David Cobb, asked the district court to allocate this settlement into personal injury proceeds and wrongful death proceeds. The district court found the settlement to contain both categories, each at a certain percentage. Gordon Rees Scully Mansukhani, LLP, and Robert Bragalone, Esq., (collectively, GRSM), represented Andra in her personal injury action and now appeal the district court's order. GRSM proffers myriad arguments that the entirety of Andra's settlement should be classified as personal injury proceeds and that the district court erred in finding the settlement to comprise both personal injury proceeds, from which GRSM is entitled to collect attorney fees, and wrongful death proceeds, from which it is entitled to none. We affirm.

**BACKGROUND**

**{2}**    In 2018, Andra, Paul, and four others were in a helicopter crash in northern New Mexico. Andra was the only person to survive the crash, although she sustained personal injuries. A resident of Texas, Andra hired GRSM, a Texas-based law firm, to "investigate and pursue all viable claims for damages" against potential defendants. Andra's mother, Martha Cobb (Marty), acting individually and as a personal representative of Paul's estate, separately hired GRSM for the same purpose. Marty later terminated GRSM and hired a different lawyer to represent her and her two other children (collectively, the Cobbs, which does not include Andra) for loss of consortium and wrongful death damages.

**{3}**    Andra, the Cobbs, and the later-appointed PR jointly filed a lawsuit against the helicopter company, the pilot's estate, and the helicopter owner's estate in a New Mexico district court at the end of 2020. The parties settled for $14 million in 2021. In an ensuing fee settlement agreement (FSA), Andra and the Cobbs agreed to split the $14 million into two equal lump sums, but, critically, did not categorize the two sums any further or identify how much money was related to each claim. In the FSA, Andra and the Cobbs acknowledged their designation as statutory beneficiaries under the New Mexico Wrongful Death Act (WDA), NMSA 1978, §§ 42-2-1 to -4 (1882, as amended through 2001), but waived its application as to distribution of statutory percentages.

**{4}**    With no categories of damages delineated in the FSA—such as personal injury, wrongful death, or loss of consortium—GRSM and the PR's attorney disagreed on how much Andra owed in attorney fees and to whom. Andra hired another attorney to represent her in that fee dispute, and Andra and the PR filed motions asking the district court to allocate her settlement proceeds between personal injury proceeds and wrongful death proceeds. The district court granted the allocation motions and held a two-day evidentiary hearing in August 2023.

**{5}**    At the evidentiary hearing, the district court heard extensive testimony from the parties to the original case, their attorneys, and several expert witnesses presented by the PR. The district court made several findings, including that New Mexico case law authorized district courts to allocate attorney fees, that the FSA unambiguously stated that Andra had received an unspecified wrongful death distribution within her $7 million, that Andra's settlement proceeds should be allocated as $1.2 million for personal injury proceeds and $5.8 million for wrongful death proceeds, and that GRSM was entitled to its 36 percent fee on the personal injury proceeds and the PR's attorney was entitled to his 20 percent fee on the wrongful death proceeds. GRSM appeals.

**DISCUSSION**

**{6}**    GRSM raises many issues on appeal, and we group them into categories and address them accordingly. First, GRSM argues that the district court did not have jurisdiction to hold an allocation hearing or to allocate attorney fees in general and that Andra and the PR did not have standing to request either of the district court. Second, GRSM argues that the district court erred in its interpretation of the various contracts in the case. Third, GRSM argues that the district court erred by adopting Andra's expert

allocation recovery testimony and rejecting its alternative theories of recovery, namely a "Million Dollar Alternative" and quantum meruit recovery.

**{7}** We review the district court's ruling on attorney fees for an abuse of discretion. *See Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947 ("The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court."). "Even when we review for an abuse of discretion, however, we review the application of the law to the facts de novo." *Id.* When considering questions of contract interpretation, then, we apply de novo review. *Cheng v. Rabey*, 2023-NMCA-013, ¶ 19, 525 P.3d 405 ("Interpretation of a contract is a matter of law that we review de novo.").

## I.      Jurisdiction and Standing

**{8}** "The question of whether a court has subject matter jurisdiction is a question of law which we review de novo. Our district courts enjoy the presumption of jurisdiction, in the absence of proof to the contrary." *Palmer v. Palmer*, 2006-NMCA-112, ¶ 13, 140 N.M. 383, 142 P.3d 971 (omission, internal quotation marks, and citations omitted). Additionally, "[w]hether a party has standing to bring a claim is a question of law which we review de novo." *McAneny v. Catechis*, 2023-NMCA-055, ¶ 9, 534 P.3d 1007 (internal quotation marks and citation omitted).

**{9}** GRSM offers several theories as to why the district court did not have jurisdiction to hold an allocation hearing. GRSM takes particular issue with the district court's reliance on a nonprecedential case, *Murphy v. Eagle's Nest Condominiums Ass'n*, 2018 WL 2214462, mem. op. (N.M. Ct. App. Apr. 11, 2018) (nonprecedential), in finding that it had authority to conduct a hearing to allocate proceeds of the Cobbs and Andra's lump sum settlement. Indeed, the district court quoted *Murphy* in its final judgment: "It is the district court's duty to review a request for attorney fees and determine what portion of the work done is attributable to each claim for which fees are sought." *Id.* ¶ 13. However, the cited proposition in *Murphy* stems from two precedential opinions, one of which the district court referenced in its citation to *Murphy*: *Jaramillo v. Gonzales*, 2002-NMCA-072, 132 N.M. 459, 50 P.3d 554, and *Dean v. Brizuela*, 2010-NMCA-076, 148 N.M. 548, 238 P.3d 917.

**{10}** Both *Dean* and *Jaramillo*, among other cases, recognize that trial courts are "required to review the request [for attorney fees] and determine what portion of the work done was attributable" to each claim for which attorney fees are sought. *Jaramillo*, 2002-NMCA-072, ¶ 39; *Dean*, 2010-NMCA-076, ¶ 18 (same); *see also Hinkle, Cox, Eaton, Coffield & Hensley v. Cadle Co. of Ohio, Inc.*, ¶ 32, 1993-NMSC-010, 115 N.M. 152, 848 P.2d 1079 ("[T]he trial court should attempt to distinguish between the two types of work" when awarding attorney fees); *State ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*, 2022-NMCA-026, ¶ 80, 511 P.3d 329 ("We leave the details of allocation to the district court in the first instance."). We agree with the district court that New Mexico case law authorizes district courts to allocate attorney fees and find no error in the district court doing so here.

**{11}** Additionally, GRSM puts forth several arguments related to standing. For example, GRSM points to a stipulation for dismissal with prejudice it filed on behalf of Andra to assert that since the stipulated dismissal was granted, Andra lacked standing to bring additional fee-related claims. However, the dismissal addressed claims against former defendants but *not* against GRSM itself. Thus, a valid dismissal of this type would mean that Andra was barred from bringing the same claims against the same defendants, for res judicata purposes. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 66, 148 N.M. 106, 231 P.3d 87 ("A dismissal with prejudice is an adjudication on the merits only to the extent that when a claim has been dismissed with prejudice, the fourth element of *res judicata* (a final valid judgment *on the merits*) will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction."). But such a dismissal does not prevent Andra from bringing wholly distinct claims against wholly distinct defendants, such as claims against GRSM for withholding fees from Andra.

**{12}** Relatedly, GRSM cites no authority that properly supports its contention that the dismissal eviscerated the court's jurisdiction. Rather, GRSM cites *Becenti v. Becenti* to say that "the voluntary dismissal of a suit leaves a situation the same as though the suit had never been brought and upon such voluntary dismissal, . . . jurisdiction of the court is immediately terminated." 2004-NMCA-091, ¶ 9, 136 N.M. 124, 94 P.3d 867 (alteration, omissions, internal quotation marks, and citation omitted). But *Becenti* refers to the sort of voluntary dismissals prescribed in Rule 1-041(A)(1)(a), which are distinct from those found in Rule 1-041(A)(1)(b)—the sort filed in this case. 2004-NMCA-091, ¶ 9. GRSM's other proffered case, *McCuistion v. McCuistion*, supports the notion that the kind of dismissals in the current case dissolve jurisdiction—but only when such dismissals are signed by *both* parties, unlike the dismissal here. 1963-NMSC-144, ¶¶ 8-10, 73 N.M. 27, 385 P.2d 357. Therefore, GRSM provides no authority for its argument that Andra's voluntary dismissal effectively rid her of standing and the district court of jurisdiction, and "this Court will not consider propositions that are unsupported by citation to authority." *N.M. State Inv. Council v. Weinstein*, 2016-NMCA-069, ¶ 35, 382 P.3d 923.

**{13}** GRSM further argues that the district court lacked jurisdiction to hold an allocation hearing by arguing that the PR was the sole party responsible for the distribution of WDA proceeds, and therefore that Andra—as a statutory beneficiary but *not* a PR—lacked standing to demand allocation. *See* § 41-2-3. GRSM is correct that it is the personal representative and not a statutory beneficiary who has standing to seek and distribute WDA proceeds. *See Spoon v. Mata*, 2014-NMCA-115, ¶ 27, 338 P.3d 113 ("[T]he personal representative remains distinct from the beneficiaries as the party who must bring the wrongful death action and as the only party to the action pursuing the claims for damages that result from the injuries." (internal quotation marks and citation omitted)). However, Andra was not *bringing* a wrongful death action in her request for the district court to allocate settlement proceeds; the wrongful death action had passed and settled. Instead, Andra was requesting a fee allocation hearing so that her personal injury proceeds and her wrongful death proceeds—if the court found them to exist—could be appropriately allocated. Even if we were to assume that Andra lacked

standing to request a fee allocation hearing for her wrongful death proceeds in light of statutory and case law establishing that wrongful death rights belong only to personal representatives, Andra's personal injury claims alone gave her the requisite standing to move the court to allocate her settlement proceeds. *See id.*

**{14}** GRSM goes on to challenge the PR's standing because he did not suffer an injury in fact and therefore had no claim against GRSM. We reject this argument due to the explicit grant of standing to personal representatives by the WDA, despite their not having suffered an injury. *See* § 41-2-3 ("Every action mentioned in Section 41-2-1 . . . shall be brought by and in the name of the personal representative of the deceased person."); *see also Leyba v. Whitley*, 1995-NMSC-066, ¶ 21, 120 N.M. 768, 907 P.2d 172 ("The authority of a personal representative to bring suit for wrongful death stems solely from the [WDA], and the personal representative's sole task under that Act is to distribute any recovery in strict accordance with the statute.").

**{15}** GRSM's final jurisdictional contention relates to in rem jurisdiction. GRSM contends that in rem proceedings can only be against property and not against opposing litigants, arguing that this case is between "actual litigants" rather than property. *See Kaywal, Inc. v. Avangrid Renewables, LLC*, 2021-NMCA-037, ¶ 39, 495 P.3d 550 ("A proceeding in rem is one taken directly against property." (alteration, internal quotation marks, and citation omitted)); *Mathieson v. Hubler*, 1978-NMCA-119, ¶ 29, 92 N.M. 381, 588 P.2d 1056 ("In an in rem proceeding, there are no parties in the sense of opposing litigants."). However, existing case law directly rebuts GRSM's argument and provides that an "in rem action is directed, not *against* the property per se, but rather at resolving the interests, claims, titles, and rights in that property. And it is persons—as individuals, governments, corporations—who possess those interests, claims, titles, and rights." *State v. Nunez*, 2000-NMSC-013, ¶ 78, 129 N.M. 63, 2 P.3d 264. Andra and the PR possessed interests, claims, and rights to the settlement proceeds from their claims. Thus, we hold that the district court did not err in its finding that it had in rem jurisdiction over such property.

## II.    Contract Interpretation

**{16}** GRSM's arguments regarding contract interpretation involve three contracts: the FSA (between Andra and the Cobbs), the Wrongful Death Fee Settlement (WDFS), and the GRSM fee agreement. We briefly address each contract, applying a de novo standard of review. *See Cheng*, 2023-NMCA-013, ¶ 19.

## A.    Fee Settlement Agreement

**{17}** The FSA contains little about Andra's share of the $14 million settlement proceeds beyond the bare amount: $7 million, exactly half. The portions of the FSA relevant to allocation of Andra's settlement money follows:

Andra has a right to recover for her individual claims for her personal injuries ("Andra's Claims"); and each of the Cobbs and Andra are beneficiaries under the [WDA] ("Wrongful Death Claims").

. . . .

In consideration of this Agreement and the mutual promises within it, the Parties agree that they will not seek to have any portion of the Settlement distributed pursuant to the statutory percentages under the [WDA] . . . and expressly waive any rights they may have to a different distribution . . . .

By entering into this Agreement, and in partial consideration for Andra's Portion, Andra waives her right to any *further recovery of the* [*s*]*ettlement* and hereby disclaims any further rights to additional distributions under the [WDA].

(Emphasis added.)

**{18}** From this, GRSM advances two arguments: first, that the italicized language is unambiguous; and second, if such language is ambiguous, the district court should have considered extrinsic evidence in interpreting its meaning. *See Walters v. Hastings*, 1972-NMSC-054, ¶ 18, 500 P.2d 186 (finding a need to weigh parol evidence when the "words within the four corners of the contract make reference to activities or discussions not further explained").

**{19}** GRSM argues that the italicized portion above unambiguously establishes that Andra waived her right to any wrongful death recovery at all. It asserts that the language stating that Andra "disclaims any further rights to additional distributions under the [WDA]" refers to recovery that is in addition to what the *Cobbs* received. Andra and the PR argue the opposite: that such language denotes Andra waived her right to receive any *more* wrongful death proceeds, directly implying that she had already received some unspecified amount. Both parties feel that this language is unambiguous—albeit to opposite ends. Despite the contradicting arguments, the district court found that the provision was "not subject to more than one reasonable interpretation." It sided with Andra and the PR that at least some of Andra's $7 million was wrongful death proceeds. While we disagree with the district court that the above portion of the FSA is unambiguous, we agree with its conclusion that Andra's recovery included both wrongful death and personal injury damages. We explain.

**{20}** Ambiguity is a question of law determined under de novo review. *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844. That the language in the FSA can be construed to opposite meanings is evidence of ambiguity. *See Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 7, 123 N.M. 526, 943 P.2d 560 ("A contract is ambiguous if the court determines it can reasonably and fairly be interpreted in different ways."). Because Andra and the PR's interpretation and GRSM's interpretation of the contract provision are reasonably construed to opposite meanings, and because the

express terms of the FSA do not reveal the true meaning, we conclude it to be ambiguous. Given that ambiguity exists, we next must decipher the meaning of the ambiguous terms. Doing so becomes a question of fact. *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 13, 114 N.M. 778, 845 P.2d 1232 ("Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact."). We must therefore consider whether the district court's findings of fact in determining what is meant by the ambiguous language in the FSA are supported by substantial evidence.

**{21}** Although the district court found the language to be unambiguous, negating the need to consider extrinsic evidence in interpreting the contract, the district court nevertheless considered extensive extrinsic evidence in making its decision: a two-day evidentiary hearing. At that hearing, the district court heard testimony of the attorneys regarding their work load for each claim and found GRSM's testimony unsupported and "without written documentation." It heard testimony of three expert witnesses with experience litigating wrongful death and personal injury actions in New Mexico, most notably Rachel Higgins, an attorney who practices in New Mexico, who attested to serving as a guardian ad litem or personal representative in over one hundred cases. All three experts were found credible and recommended allocating no more than $1.2 million for Andra's personal injury recovery, with one expert valuing her personal injury claim as low as $250,000. Two of the three experts recommended a roughly 90 percent to 10 percent allocation, with the greater percentage for wrongful death and the lesser for personal injury. GRSM presented no experts, but they did present one witness: Robert Bragalone, a GRSM attorney. Andra and the PR later presented testimony that contradicted Bragalone's testimony; the district court found the former credible and the latter not credible.

**{22}** The hearing also included testimony of the original parties regarding contract drafting and revealed no intent to prevent Andra from receiving wrongful death proceeds. In fact, the district court reviewed an earlier draft of the FSA, in which appeared language that was later struck: "Andra waives her right to any portion of the Wrongful Death Claims." That this language was absent from the final FSA is evidence of the parties' intent in drafting it: that Andra did *not* waive her right to any portion of the wrongful death claims.

**{23}** Despite our disagreement with the district court as to the contract's ambiguity, we hold its conclusion that Andra's interpretation of the FSA—that Andra received some unknown portion of wrongful death proceeds in her $7 million apportionment—to be supported by substantial evidence. As well, wrongful death and personal injury practice in New Mexico and the testimony of witnesses found to be credible by the district court likewise supported the allocation of Andra's settlement proceeds.

**{24}** Also based on the above language from the FSA, GRSM argues that the district court's allocation led to a disparity between wrongful death proceeds between Andra and her siblings so extreme as to invalidate the final judgment (a ratio of nearly six to one), contradicted the WDA, and stemmed from expert testimony "untethered" to the facts. We disagree. The parties explicitly disclaimed application of the WDA as relating

to "distribution pursuant to statutory percentages" in the FSA. Under our de novo review of the language, we find no ambiguity: the WDA's statutory percentage distributions do not apply to the FSA. We therefore find no fault in the district court's refusal to allocate Andra's settlement proceeds according to the WDA. And although we recognize the disparity between wrongful death proceeds between Andra and the Cobb siblings, we defer to the parties' choices in drafting the contract. Public policy encourages settlements as well as the duty of the courts to enforce those contracts as the parties intended them. *Bd. of Educ. v. N.M. State Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 14, 128 N.M. 398, 993 P.2d 112 ("[P]ublic policy encourages, and we have a duty to enforce, settlement agreements."). Thus, we trust that had the parties intended a categorized allocation of proceeds within Andra's allotment, they would have so specified. Finally, GRSM's notion that an expert's testimony was untethered to the facts is negated by the district court's finding that the same expert was credible and that her testimony was corroborated by two other experts. Here again the district court's finding is supported by substantial evidence, and we find no basis to reverse.

## B.      Wrongful Death Fee Settlement

**{25}**   GRSM argues that the WDFS released any claim the PR could bring against GRSM, meaning that in moving the court to allocate attorney fees, the PR violated his release and covenant not to sue. In the WDFS, the Cobbs settled with GRSM for a $200,000 attorney fee on their $7 million allocation (the other half of the $14 million total). In the same agreement, the PR was listed as a "releasor" and GRSM a "releasee." However, the language of the WDFS also included the following: "This matter arises from a fee dispute between [the PR], the Cobbs, and GRSM" and "Nothing in this Agreement shall be construed to release or discharge or relate to any fees involving Andra."

**{26}**   We again see no ambiguity in the language of the WDFS that Andra's settlement allocation is excepted from the PR's release of GRSM, leaving the door open for the PR to fulfill his statutory duty to seek and distribute wrongful death proceeds for Andra, a statutory beneficiary. *See In re Est. of Lajeuenesse,* 2013-NMCA-004, ¶ 12, 292 P.3d 485 (reiterating a personal representative's statutory responsibility to pursue claims for wrongful death damages on behalf of statutory beneficiaries). In moving the district court to allocate Andra's settlement proceeds, the PR was simply fulfilling a statutory duty owed to Andra.

**{27}**   Additionally, the district court heard testimony regarding the WDFS from parties involved in its drafting and found such testimony to be credible, compelling, and consistent with the finding that the contract is unambiguous and that substantial evidence supported the above interpretation. Thus, we conclude that the WDFS did not release GRSM from claims brought against it on Andra's behalf, and therefore that the PR's standing to bring an allocation motion remained intact.

## C.      GRSM Fee Agreement

**{28}**  GRSM asserts that the fee agreement in which Andra hired GRSM at the dawn of this case contains language that binds Andra to arbitration should a dispute arise. GRSM specifically points to the following provision:

> If a dispute arises between [GRSM] and [Andra] . . . as to whether any legal services rendered by [GRSM] under this Agreement or otherwise, were improperly, negligently, or incompetently rendered, or otherwise rendered in breach of a contractual, ethical or other duty, the dispute will be submitted for arbitration . . . .
>
> . . . .
>
> [A]ny dispute over [GRSM]'s fees or expenses will be resolved by binding arbitration pursuant to the process described above in this [Agreement].

Andra and the PR argue that the language about disputes "between GRSM and Andra regarding GRSM's fees or expenses under this Agreement" relates only to matters of GRSM's fee details, such as its 36 percent rate, and has nothing to do with how Andra's settlement should be allocated. The district court did not address the issue, likely because it had already granted Andra's motion to abate arbitration proceedings initiated by GRSM in Texas months earlier.

**{29}**  We view the current issue—how Andra's settlement should be allocated—as distinct from those requiring arbitration by the fee agreement. Andra does not argue that GRSM was negligent or incompetent or that they in any way breached their contractual, ethical, or other duties. She does not dispute any of GRSM's fees or expenses; Andra is prepared to pay GRSM 36 percent of her wrongful death proceeds. The issue here is not *whether* GRSM should get paid for their work on Andra's wrongful death claims; the issue is how much those wrongful death claims *are*. Thus, because New Mexico law supports trial courts' authority to allocate attorney fees, as discussed above, the allocation question was appropriately before the district court and was separate from those issues that must, according to the fee agreement, be resolved through arbitration.

### III.   Alternative Theories

**{30}**  Lastly, GRSM challenges the district court's attorney fee allocation by asserting that it should have used a theory of allocation offered by GRSM: the "Million Dollar Alternative." GRSM alternatively asks this court to render judgment on a quantum meruit theory of recovery if we are to accept the district court's allocation. We review attorney fee decisions for abuse of discretion. *See Garcia*, 2004-NMCA-004, ¶ 15 ("The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court.").

**{31}**  GRSM proposed the "Million Dollar Alternative" at the evidentiary hearing. Under this theory, Andra and her two siblings would receive wrongful death proceeds reflecting those prescribed by the WDA: equal portions, and here, $1 million each. GRSM

advocated for the application of the WDA because the result would be "less[ ]absurd" than the outcome under the FSA, arguing that Higgins at the evidentiary hearing based her recommendation on the WDA despite the family's waiver thereof in the FSA and that the district court erred in accepting her recommendation. The district court found the testimony offered by Andra and the PR's witnesses at the evidentiary hearing to be "almost completely unrebutted" and to "establish[] that the share of Andra's [p]ortion attributable to the wrongful death claim was much more significant than that attributable to Andra's personal injury claim." The district court therefore rejected the "Million Dollar Alternative." On appeal, GRSM argues that the district court erred in rejecting this theory of allocation. Andra and the PR disagree, pointing out that Andra and the Cobbs expressly waived application of the WDA in the FSA. Andra and the PR also argue that the district court was never asked to allocate any of the Cobbs' $14 million settlement, only Andra's $7 million apportionment, so it would have been erroneous for the district court to reallocate any proceeds that the family had already allocated under the FSA.

**{32}** The district court appropriately applied the parties' contractual agreement to set aside the WDA in its percentage breakdown, in keeping with the parties' express intention in the FSA. *See McConal Aviation, Inc. v. Com. Aviation Ins. Co.*, 1990-NMSC-093, ¶ 20, 110 N.M. 697, 799 P.2d 133 ("We feel compelled to enforce the terms and expectations of the settling parties."). Furthermore, it found the testimony regarding proposed allocations to be compelling, credible, and unrebutted. This decision is logical and within the district court's discretion. Thus, we hold the district court's rejection of GRSM's "Million Dollar Alternative" in its fee allocation to be a discretionary decision that does not offend the logic and effect of the facts and circumstances of this case. *See Garcia*, 2004-NMCA-004, ¶ 15 ("An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case." (internal quotation marks and citation omitted)); *see also Dean*, 2010-NMCA-076, ¶ 18 ("It was for the trial court to review the claim made by [the p]laintiffs and in its discretion determine what fees to award." (internal quotation marks and citation omitted)).

**{33}** The next alternative proposed by GRSM in its attempt to recover the maximum amount of attorney fees is quantum meruit recovery and applies only if this Court accepts the district court's allocation of wrongful death ($5.8 million) and personal injury proceeds ($1.2 million). Because we accept the district court's allocation, we address GRSM's quantum meruit theory. Under this theory, GRSM should recover its 36 percent fee from *both* Andra's wrongful death proceeds and her personal injury proceeds. In support, GRSM points to Bragalone's testimony at the evidentiary hearing in which he "presented unrebutted evidence of 1,000[-plus] hours of legal services [GRSM] provided to develop the wrongful death claim" for Marty before Marty selected new counsel. GRSM maintains that it did 90 percent of the work on the wrongful death claim that was now being awarded to Andra ($5.8 million) and was therefore entitled to quantum meruit recovery, specifically, 36 percent on 90 percent of Andra's $5.8 million wrongful death proceeds.

**{34}** In response, Andra and the PR define quantum meruit as a theory only applicable when no privity exists between parties. *See Ontiveros Insulation Co., Inc. v.*

*Sanchez,* 2000-NMCA-051, 129 N.M. 200, 3 P.3d 695 ("The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."). Andra and the PR claim that even if GRSM had a viable claim for quantum meruit recovery, GRSM did not meet the burden of proof for the value of the services rendered. Andra and the PR assert that Bragalone testified to about a thousand-plus billable hours but did not provide any documentation to support such work, nor did GRSM call any witnesses to corroborate, or expert witnesses to testify as to the time an attorney of ordinary skill and capacity would reasonably spend on pursuing this kind of litigation.

**{35}** The district court agreed with the latter assertion, finding that GRSM "did not meet their burden of proof on this issue." The district court found persuasive the lack of expert testimony, the lack of written documentation, and the lack of credibility of GRSM's sole witness, Bragalone. We likewise hold that the district court did not abuse its discretion in finding GRSM's theory regarding quantum meruit recovery unpersuasive and affirm the rejection thereof.

**CONCLUSION**

**{36}** We affirm.

**{37} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**